467 So.2d 175 (1985)
Bobby HAYES, Plaintiff-Appellee,
v.
STATE of Louisiana, OFFICE OF EMPLOYMENT SECURITY, et al., Defendants-Appellants.
No. 84-181.
Court of Appeal of Louisiana, Third Circuit.
April 10, 1985.
*176 Ann Metrailer, James A. McGraw and Eddie G. Crawford, Baton Rouge, for defendant-appellant.
Rodney M. Rabalais, Marksville, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY, STOKER, KNOLL and KING, JJ.
KING, Judge.
The sole issue presented by this appeal is whether the District Court was correct in reversing the decision of the Board of Review of the Louisiana Office of Employment Security which denied plaintiff unemployment compensation benefits.
Plaintiff, Bobby Hayes, (hereinafter Hayes) voluntarily resigned from his job as a Louisiana State Penitentiary Lieutenant at Angola, Louisiana, claiming that he was being unfairly harassed on the job. The Louisiana Office of Employment Security (hereinafter Agency) initially determined that Hayes was eligible for unemployment compensation benefits finding that he left his job for good cause connected with his employment. The Louisiana Department of Corrections (hereinafter Department) appealed this initial determination to the Agency's Appeals Tribunal under LSA-R.S. 23:1629. The Appeals Referee reversed the Agency's initial determination and found that Hayes was disqualified from receiving benefits. Hayes appealed this decision to the Board of Review of the Agency pursuant to LSA-R.S. 23:1630. The Board of Review affirmed the decision of the Appeals Referee denying Hayes benefits. Hayes then timely filed a petition of review in the District Court pursuant to LSA-R.S. 23:1634. The District Court ruled that Hayes had left his job with good cause connected with his employment and that he was entitled to unemployment compensation benefits and reversed the decision of the Board of Review. The Department then timely appealed the decision of the trial court. We reverse.

FACTS
Hayes worked for the Department at Angola Penitentiary as a Louisiana State Penitentiary *177 guard for seven years. During his last five years of employment, he worked in the field as a supervisor of prison guards from 7:00 A.M. to 4:00 P.M. on Monday through Friday of each week as well as every other weekend. Hayes lived approximately 60 miles from Angola and commuted daily to work. On January 14, 1982 Hayes started to drive to work but feared he would be unable to safely cross the Moncla Bridge over the Red River due to severe weather conditions and ice. He returned home approximately one hour prior to the commencement of his shift and telephoned to report that he could not reach work because of the icy conditions. Hayes returned to work the next day to find that his supervisor, Major Dixon, had placed him on W status (one day leave without pay) for missing work. This one day suspension without pay was imposed by Major Dixon, in accordance with the established policy of the Department, because Hayes' absence was unexcused.
Hayes then filed a grievance stating his disagreement with Major Dixon's decision to place him on W status. Shortly thereafter, Hayes was transferred from a guard in the field to a guard at Camp I which changed his working hours from 5:00 A.M. to 5:00 P.M. on Monday through Friday of each week and every other weekend. Hayes reported for work at Camp I on the first day of his new assignment and then took the day off. He did not return to work until two weeks later because he claimed he was suffering from a nervous condition that necessitated medical care. After returning from his two week layoff, Hayes worked for two days as a guard at Camp I and then again took off work for about a month. While off work the second time Hayes heard that he had been transferred to guard duty on the night shift at the Reception Center. Upon returning to work, after his second absence of nearly a month, Hayes went to the Warden and voluntarily resigned from employment claiming harassment because of being assigned to work different shifts. At the time of his resignation Hayes had not even attempted to work as a guard on the night shift at the Recreation Center.

RESIGNATION FOR GOOD CAUSE CONNECTED WITH EMPLOYMENT
This court, as well as the district court below, is limited in its power to review the decisions of the Board of Review. LSA-R.S. 23:1634 provides:
"In any proceeding under this Section the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law...."
In interpreting the standard of review provided by LSA-R.S. 23:1634, our brethren of the First Circuit Court of Appeal have stated:
"In short, our jurisdiction is limited to questions of law; we simply do not have the jurisdiction or authority to disturb the findings of fact of the Board of Review where questions of weight and credibility are involved and where their conclusions are supported by sufficient evidence. Vancouver Plywood Co., Inc. v. Sumrall, 415 So.2d 625 (La.App. 3rd Cir. 1982); Dunigan v. Administration of Dept. of Employment Security, 351 So.2d 807 (La.App. 1st Cir.1977)." Southeastern Louisiana University v. Shelton, 431 So.2d 432, 435 (La.App. 1st Cir.1983).
With the applicable standard of review in mind, we now turn to the merits of this case.
A claimant is disqualified from receiving unemployment benefits if he resigns without good cause connected with his employment. LSA-R.S. 23:1601(1). The term "good cause connected with his employment" has been interpreted to mean cause related to the employee's working conditions or his ability to continue working. McDonald v. Lockwood, 424 So.2d 356 (La. App. 2nd Cir.1982); McGraw v. Director of Postal Data Center, 319 So.2d 797 (La. App. 1st Cir.1975). This court has specifically *178 recognized that it is good cause connected with employment to resign if the work becomes unsuitable due to unanticipated working conditions. Joshua v. State, Office of Employment Sec., 460 So.2d 714 (La.App. 3rd Cir.1984). We stated the applicable rule concerning resignation due to working conditions in McGinnis v. Moreau, 149 So.2d 188 (La.App. 3rd Cir. 1963), as follows:
"Under this statutory provision, mere dissatisfaction with working conditions does not constitute `good cause' for quitting the employment, unless the dissatisfaction is based upon discriminatory or unfair or arbitrary treatment or is based upon a substantial change in wages or working conditions from those in force at the time the claimant's employment in his position commenced, so as to render the work unsuitable to the claimant, considering the worker's physical fitness, qualifications, earning ability, and the like." McGinnis v. Moreau, supra, at page 190.
See also Dunigan v. Adm. of the Dept. of Emp. Sec., 351 So.2d 807 (La.App. 1st Cir. 1977).
Hayes contends that the Department's decision to change his work shifts subjected him to unanticipated working conditions and therefore he had good cause to leave his job. However, at the appeal hearing Hayes himself admitted that, as an employee of the Department, he knew he was subject to being transferred from shift to shift and having his working hours changed. This condition of employment was corroborated by a representative of the Department who also testified at the appeal hearing. A claimant who resigns after refusing reassignment to another shift, who knew upon accepting employment that he was to perform shift work, leaves employment without good cause. Lingo v. State, Dept. of Emp. Sec., 364 So.2d 1367 (La.App. 3rd Cir.1978); Rogers v. Doyal, 215 So.2d 377 (La.App. 2nd Cir. 1968). Therefore, we cannot say that the Board of Review lacked sufficient evidence to support its finding of fact that Hayes did not have good cause to leave his job because of his dissatisfaction with his working hours when he knew upon accepting employment that changes in shifts and working hours could occur from time to time and such shift changes could have been anticipated by him from time to time.
Hayes also contends that he had good cause to leave his job because he was being harassed by means of transfers to other positions under less desirable conditions because of his filing a grievance over his one day suspension by his supervisor.
The Board of Review found that Hayes failed to prove discrimination or unfair or arbitrary treatment merely because of changes of work assignment from one shift to another. Our review of the record shows that there is no evidence showing discrimination or unfair or arbitrary treatment and this finding of fact of the Board of Review will not be disturbed where there is evidence reasonably tending to sustain such finding. Cotton Bros. Baking, Inc. v. Bettevy, 367 So.2d 1274 (La.App. 3rd Cir.1979); Lingo v. State, Dept. of Emp. Sec., supra; Ware v. Doyal, 320 So.2d 212 (La.App. 3rd Cir.1975). We find that the decision of the Board of Review that Hayes failed to prove discrimination or unfair or arbitrary treatment is supported by the lack of evidence in the record.
From our review of the record we conclude the legal evidence supports the finding that Hayes is disqualified since he left his employment for personal reasons rather than for "good cause connected with his employment," and for this reason we reverse the trial court judgment and reinstate the ruling of the Board of Review denying Hayes unemployment compensation benefits.
Costs may not be assessed against the Office of Employment Security, La.R.S. 13:5112(C); La.R.S. 23:1548, nor against Hayes, La.R.S. 23:1692, nor should they be assessed against the Department, S.L.U. v. Shelton, 431 So.2d 432, 436 (La.App. 1st Cir.1983). Thus, it appears that no party to the litigation is legally responsible for the *179 costs and they must be absorbed by the Clerk of this court and the Clerk and Sheriff of the trial court. Livingston Parish School Bd. v. State, 426 So.2d 246, at page 249 (La.App. 1st Cir.1983).
REVERSED AND RENDERED.
KNOLL, J., dissents and assigns reasons.
KNOLL, Judge, dissenting.
I respectfully disagree. The unanticipated transfers of Hayes, a field guard with an excellent work record, coming on the heels of filing a grievance and testifying against his immediate supervisor, constituted harassment.